CLERK'S OFFICE
A TRUE COPY
Aug 15, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of ) 
*(Briefly describe the property to be searched* ) 
*or identify the person by name and address)* )  Case No. 24 MJ 180
) 
one Apple iPhone, white in color, in a clear case with )  **Matter No.: 2023R00109**
gold borders; currently located at the ) 
DEA Milwaukee District Office ) 

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. 841(a)(1); 846 and 843(b) | Distribution and Possession with Intent to Distribute a Controlled Substance; Conspiracy; Unlawful Use of a Communication Facility to Facilitate the Distribution of a Controlled Substance |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

TYLER OWENBY  Digitally signed by TYLER OWENBY
Date: 2024.08.14 08:41:32 -05'00'

_____
*Applicant's signature*

SA Tyler F. Owenby, DEA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone
_____ *(specify reliable electronic means)*.

Date: 08/15/2024

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. William E. Duffin, U.S. Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**
**Matter No.: 2023R00103**

I, Tyler F. Owenby, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Federal Rule of Criminal Procedure 41 for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Drug Enforcement Administration, and have been since 2021 and am currently assigned to the DEA Milwaukee District Office.  As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963.  I have been involved in electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

3.      Prior to my employment with the DEA, I spent the previous five years working as an Analyst assigned to the Columbia Missouri Police Department's, Vice Narcotics and Organized Crime Unit.  As part of my duties as an Analyst, I was formally trained and certified in the areas of mobile phone forensics, cell tower and phone toll analysis, and advanced open-source intelligence gathering techniques.

4. I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. More specifically, my training and experience includes the following:

a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b. I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

d. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

e. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

f. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

g. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

2

5.      Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on the information described below, I believe there is probable cause that Lorenzo GOODEN has violated Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribution and Possession with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility to Facilitate the Distribution of a Controlled Substance) and that evidence of this crime can be found in the **Device** as described in Attachment A. The particular evidence to be seized from the **Device** is described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7.      The property to be searched is the cellphone recovered from Lorenzo GOODEN on July 25, 2024, during his arrest at 2920 N Vel R. Phillips Ave, Milwaukee, WI 53212, more fully described as the following, hereinafter referred as the "**Device**":

a.      one Apple iPhone, white in color, in a clear case with gold.

The **Device** is currently located at the DEA Milwaukee District Office in Milwaukee, Wisconsin.

8.      The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

Case 2:24-mj-00180-WED-SEALED Filed 08/15/24 Page 4 of 29 Document 1

**PROBABLE CAUSE**

9.    Since February 2023, case agents have been investigating the drug trafficking activities of Lorenzo GOODEN and others.  As part of the investigation into GOODEN, case agent learned that GOODEN is currently on Wisconsin Probation and Parole for Possession with intent to deliver controlled substance, heroin (Milwaukee County Case 2018CF001006).

10.    On February 23, 2023, United States Postal Inspection Service Inspector Kim Lincoln was alerted to a parcel bearing USPS Priority Mail Express tracking number EI 649 372 511 US (wooden crate) being shipped to Jordan Woodman at the address 1940 North 15th Street, Milwaukee, WI, 53205.  The parcel was shipped from California with a return name and address of the "Earthquake Store" located in Burbank California.  The address of 1940 North 15th Street does not exist, and the parcel was not delivered.  On this same date two individuals showed up at the Hilltop Post Office in Milwaukee, Wisconsin attempting to take custody of the package addressed to Jordan Woodman.  The first individual claimed to be James Woodman and further stated to the employee at the post office that he was the nephew of Jordan Woodman.  The second individual stated they were Jordan Woodman.  However, the post office would not relinquish custody of the package because the address on the ID provided by Jordan Woodman was 1942 North 15th Street which did not match the address the parcel was addressed to.  Inspector Lincoln ultimately discovered that the parcel contained just over two kilograms of fentanyl.

11.    Case agents then examined USPS databases and discovered that this parcel and others were being tracked by IP addresses in both California and Mexico. Case agents identified other packages identical to the initial parcel (EI 649 372 511) containing fentanyl all addressed to Jordan Woodman, two in Milwaukee, one in the Saint Louis, Missouri area, and one in northern Illinois.  On February 27, 2023, case agents were conducting follow-up regarding the parcel (EI

4

Case 2:24-mj-00180-WED   Filed 03/15/24   Page 5 of 29   Document 1

649 372 511) at the Hilltop Post Office when an individual came to the counter attempting to claim the package. This person identified himself to Postal Inspectors as Jordan Woodman. This subject presented an ID Card Receipt from the Wisconsin Department of Transportation issued to Jordan Woodman at 1942 N 15th Street, Milwaukee, WI, 53205. Once the subject realized that they were speaking with law enforcement officers and not postal employees, he and a second subject with him immediately left the post office. Case agents later determined that the identification Woodman presented was false and positively identified him as Patrick VAUGHN. Case agents also identified the subject claiming to be "James" (nephew of Jordan Woodman) as James E. JAMES III. Both James and Vaughn are Milwaukee residents.

12. On June 14, 2023, SA Mitchell Ward along with USPIS Inspector Kim Lincoln interviewed Patrick VAUGHN regarding this investigation. VAUGHN admitted to attempting to retrieve the parcel (EI 649 372 511 US) from the Hilltop Post Office for his drug supplier nicknamed "400" on February 23, 2023. VAUGHN said he buys small amounts of cocaine and "weed" (i.e., marijuana) from "400". VAUGHN stated he did not know "400's" real name, but provided his phone number, i.e., 414-627-2727, which VAUGHN used to contact "400" to arrange the purchase of cocaine. VAUGHN stated that "400" uses various cars to deliver cocaine. VAUGHN described "400" as a black male, aged between mid-thirties and early-forties, who had a short or bald hairstyle.

13. Case agents then obtained a court order authorizing them to obtain call information related to telephone 414-627-2727 and reviewed historical call detail records of - telephone 414-627-2727. Case agents recognized VAUGHN's number as one of the top callers to telephone 414-627-2727. From April 14, 2023, to June 14, 2023 VAUGHN was using telephone number 414-998-7482 and communicated 127 times with telephone 414-627-2727. Case agents know that

5

Case 2:24-mj-00180-WED *SEALED* Filed 03/15/24 Page 6 of 29 Document 1

VAUGHN's phone number is 414-998-7482 because VAUGHN provided case agents consent to review the contents of his phone when he was interviewed on June 14, 2023.

14. Additionally, case agents identified another top caller as Bradley DIDENKO of 3142 South Pine Street (lower), Milwaukee, WI. DIDENKO was using telephone number 414-881-9687 from the time period of April 19, 2023, to June 16, 2023 and call records reflect 365 call between DIDENKO and telephone 414-627-2727. A search of law enforcement data bases showed that Jordan MAYRAND also resides at 3142 South Pine Street (lower), Milwaukee, WI 53207. On June 9, 2023, the West Allis Police Department arrested MAYRAND for several felony drug offences, including possession with the intent to deliver fentanyl (Eastern District of Wisconsin case no.: 23-cr-219).

15. On August 1, 2023A State of Wisconsin search warrant had been executed at DIDENKO's residence, 3142 S Pine Ave, Milwaukee, WI. Due to the nature of the search warrant and contact with Law Enforcement DIDENKO's probation and parole officer put a probation hold on DIDENKO and DIDENKO was taken into custody.

16. On August 1, 2023, case agents interviewed Bradley DIDENKO. DIDENKO stated that he regularly purchases small amounts of fentanyl from an unknown black male. DIDENKO stated that he calls telephone 414-627-2727 to arrange the purchase of fentanyl. DIDENKO stated the same person does not always deliver the fentanyl to him after he places an order. DIDENKO stated that the "main guy" is a black male who he knows only by the nickname of "Fast." DIDENKO stated that although he recently hasn't seen "Fast," "Fast's workers" last sold him a gram of fentanyl on July 31, 2023. DIDENKO said he typically buys between a half gram and a gram of fentanyl every other day. Case agents know that DIDENKO was using telephone number 414-881-9687 to contact telephone 414-627-2727 because he provided consent

6

for case agents to review the contents of his cellular phone when he was interviewed on August 1, 2023.

17.     On August 16, 2023, case agents spoke with a confidential source (CS-1) regarding this investigation.1 CS-1 stated that an individual known as "Fast" sells fentanyl and cocaine in the greater Milwaukee area.  CS-1 stated that "Fast" has been using telephone 414-627-2727 to conduct sales of fentanyl and cocaine for the past year.  CS-1 stated that once the order is placed on telephone 414-627-2727, either "Fast" or one of his "crew" delivers the narcotics at various locations in the greater Milwaukee area.  CS-1 stated that most narcotics transactions with "Fast" occur in public areas chosen by "Fast."

18.     CS-1's information is credible and reliable because CS-1 has given information concerning individuals involved in illegal activities.  CS-1's information has been independently verified through this investigation, including through controlled drug buys, queries of law enforcement databases, and surveillance.  CS-1 has made statements against his/her penal interest. CS-1 has felony convictions for Manufacture/Delivery Cocaine and Forgery.  CS-1 has no arrests or convictions relating to dishonesty.  CS-1 is cooperating with law enforcement for monetary compensation. Case agents are aware that CS-1 cooperated with another law enforcement agents in April of 2023 and during a controlled buy CS-1 attempted to keep some of the controlled substances.  Law enforcement confronted CS-1 and CS-1 admitted to conduct.  In relation to the controlled buys outlined below, case agents have conducted surveillance and reviewed the recorded drug buys.  Case agent have not observed any incidents of dishonesty or concerns about CS-1 keeping any of the controlled substances during this investigation.

Case 2:24-mj-00180-WED   *SEALED*   Filed 08/15/24   Page 8 of 29   Document 1

19. On September 20, 2023, the Honorable Stephen C. Dries, United States Magistrate Judge in the Eastern District of Wisconsin, authorized a warrant for electronic surveillance of telephone number 414-627-2727.

20. Under the direction of case agents CS-1 made a total of seven controlled buys by communicating with the holder of telephone 414-627-2727. During the course of the seven controlled buys four different individuals showed up and sold fentanyl and crack cocaine to CS-1. CS-1 purchased approximately 1 gram of fentanyl and 1 gram of crack cocaine during each controlled purchase. On two occasions GOODEN arrived at the location of the buys and provided CS-1 fentanyl and crack cocaine in exchange of law enforcement buy money.

21. On October 12, 2023, under the direction of case agents, CS-1 conducted a controlled purchase of fentanyl and crack cocaine with GOODEN. CS-1 met with case agents at a predetermined location where CS-1 and CS-1's vehicle was search for drugs, weapons, money, and other contraband with none located. CS-1 called telephone number 414-627-2727 and it was answered by an unknown male. CS-1 was instructed to come to the area of 1st Street and National in Milwaukee, Wisconsin. CS-1 was followed by case agents to the area of 1st Street and National where surveillance had already been established. CS-1 parked on the south side of East Florida Street to the east of 1st Street, Milwaukee, Wisconsin. Approximately two minutes later, case agents observed a black Nissan SUV, bearing Wisconsin plates AKF-5062 (Nissan) arrive in the area and park on the opposite side of Florida Street from CS-1's vehicle.

22. CS-1 exited his/her vehicle and entering the front passenger seat of the Nissan. The Nissan then pulled away east on Florida Street and pulled over in the area of Florida Street and Water Street. The Nissan stopped for a very brief period of time at Florida Street and Water Street and then drove back to where CS-1's vehicle was parked. CS-1 exhibited the Nissan and got back

8

into CS-1's vehicle. While inside the Nissan, CS-1 obtained suspected controlled substances in exchange for $130. The Nissan was under constant visual surveillance by case agents for the duration of the interaction with CS-1. CS-1 was then followed back to the predetermined meeting location by case agents and was under constant visual surveillance the entire time. Once back at the predetermined location CS-1 handed over two small baggies, one containing suspected crack cocaine and the other containing suspected fentanyl. The suspected crack cocaine and suspected fentanyl weighed approximately 1 gram each and were later subjected to field tests where they both yielded positive results.

23.     CS-1 was later shown a photograph of GOODEN, who CS-1 positively identified as the individual in the black Nissan who had sold CS-1 the suspected crack cocaine and suspected fentanyl. Case agents reviewed the recording made by CS-1 of the controlled buy with GOODEN and the audio/video corroborated CS-1's statements as to what occurred. Further, as detailed above, case agents were watching the controlled buy from various surveillance positions and were able to see the interaction between CS-1 and GOODEN and their observations were consistent with CS-1's statements. Case agents also compared the video recording from the buy and booking photographs of GOODEN and positively identified GOODEN as the individual that sold CS-1 fentanyl and crack cocaine.

24.     On February 7, 2024, under the direction of case agents, CS-1 conducted another controlled purchase of fentanyl and crack cocaine with GOODEN. CS-1 met with case agents at a predetermined location where CS-1 and CS-1's vehicle was search for drugs, weapons, money, and other contraband with none located. CS-1 placed a call to 414-627-2727 and was told by the holder of the phone to come to the neighborhood near North 7th Street and West North Avenue in the City of Milwaukee. While driving to the area of the meet location CS-1 placed another call to

9

414-627-2727 and was then told to meet in the area of South 7th Street and West National Avenue. CS-1 was directly followed by case agents to this location and at no time was CS-1 out of view.

25. Prior to CS-1 arriving at the meet location surveillance units in the area observed GOODEN in the 700 block of West Pierce Street driving a new model Dodge Ram, four door pickup truck gray in color, Wisconsin Plate 22577A-FT, which is registered to EAN Holdings LLC (Ram). Approximately three minutes after observing GOODEN in the area CS-1 arrived and parked in the 800 block of South 7th street and placed another phone call to 414-627-2727. During this call GOODEN directed CS-1 to the alley between South 7th Street and South 6th Street, just north of West Pierce Street. CS-1 was then observed entering the alley and parking behind the Ram, which was later determined to be driven by GOODEN. CS-1 was observed exiting CS-1's vehicle and walking to the open passenger side window of the Ram. CS-1 was observed ultimately entering the passenger seat of the Ram, where CS-1 remained for a few moments. CS-1 was then observed exiting the Ram and walking back to CS-1's vehicle. Both CS-1 and GOODEN then departed the area. CS-1 was then followed back to the predetermined meeting location by case agents and was under constant visual surveillance the entire time. Once back at the predetermined location CS-1 handed over suspected crack cocaine and suspected fentanyl that had been purchased from GOODEN. The suspected crack cocaine and suspected fentanyl each had a weight of approximately 1 gram were later subjected to field tests where they both yielded positive results.

26. Case agents reviewed the recording made by CS-1 of the controlled buy with GOODEN and the audio/video corroborated CS-1's statements as to what occurred. Further, as detailed above, case agents were watching the controlled buy from various surveillance positions and were able to see the interaction between CS-1 and GOODEN and their observations were consistent with CS-1's statements. Case agents observed GOODEN in the video recording

10

Case 2:24-mj-00180-WED *SEALED* Filed 08/15/24 Page 11 of 29 Document 1

counting the buy money and weighing the cocaine base on a small digital scale located on the arrest of the truck.

27. On July 18, 2024, your affiant became aware that GOODEN was stopped by the West Allis Police Department on July 15, 2024 in West Allis, Wisconsin. GOODEN was not arrested during this stop, but officers observed a large amount of currency in the vehicle and empty plastic baggies consistent with narcotics packaging. Based on my training, experience, and investigation into GOODEN, the large amount of currency and the empty plastic baggies were consistent with GOODEN's ongoing drug trafficking.

28. On July 25, 2024, GOODEN was taken into custody at Milwaukee Police Department District 5 located at 2920 N Vel R. Phillips Ave, Milwaukee, WI 53212, on probation violation related to the police contact on July 18, 2024. GOODEN was ultimately transported to the Milwaukee Secure Detention Facility. GOODEN was in possession of one Apple iPhone, white in color, in a clear case with gold borders **Device)** at the time of his arrest. Your affiant later took custody of the **Device** and transported the **Device** to the DEA Milwaukee District Office where the **Device** was placed into secure storage.

29. The **Device** is currently in the lawful possession of the DEA Milwaukee District Office in Milwaukee, Wisconsin. The **Device** was seized from Lorenzo GOODEN's person at the time of his. In my training and experience, I know that the **Device** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Device** first came into the possession of Milwaukee DEA.

30. Case agents believe that Lorenzo GOODEN uses cellular phones to facilitate drug trafficking activities and evidence of drug trafficking may likely be stored and recorded on the **Device**.

Case 2:24-mj-00180-WED SEALED Filed 08/15/24 Page 12 of 29 Document 1

31. Through affiant's training, experience, and discussions with other experienced law enforcement officers, affiant is familiar with the ways in which drug traffickers conduct their unlawful trade, including their methods of distribution, their use of communication devices, their use of coded communications to conduct their transactions, the employment of counter surveillance, their use of false or fictitious identities, and their use of various forms of electronic devices to store and/or conceal illegal activity.

32. Based upon my training and experience, affiant knows that individuals involved in drug trafficking frequently use cellular telephones to maintain contact and arrange transactions with their sources and customers of and co-conspirators in the distribution of controlled substances. Affiant has also found it very common for crime suspects to use their cellular telephones to communicate aurally or via electronic message in "text" format with individuals whom they purchase, trade, or otherwise negotiate to obtain illegal drugs.

33. Based on my training and experience, affiant is aware that individuals involved in trafficking controlled often possess multiple cellular devices to compartmentalize their illegal activity and to avoid law enforcement detection.

34. Based upon my training and experience, affiant believes it is common for crime suspects who possess illegal controlled substances to often take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal controlled substances and proceeds of drug trafficking. Furthermore, affiant believes it is common for these photographs and visual depictions to be kept and maintained on their cellular devices.

35. Based upon the facts described above, to include (1) my knowledge of and experience confirming the prolific use of electronic devices to facilitate the possession and trafficking of controlled substances; (2) GOODEN's previous drug dealing activities; and (3) one

12

cellular phone was recovered from GOODEN's person, there is probable cause to believe that a search of the information contained within the above described the **Device** will produce evidence of a crime, namely evidence related to the possession and trafficking of controlled substances. I am requesting records dating back to August 1, 2022.

### TECHNICAL TERMS

36.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     Cellular telephone:  A cellular telephone is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system (GPS) technology for determining the location of the device.

13

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the

14

Case 2:24-mj-00180-WED   *SEALED*   Filed 08/15/24   Page 25 of 29   Document 1

addresses or locations involved in such navigation.  The Global Positioning System (GPS) consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system (GPS) technology for determining the location of the device.

15

f.   Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.   Pager:  A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network.  Some pagers enable the user to send, as well as receive, text messages.

h.   IP Address: An Internet Protocol address (IP address) is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

16

Case 2:24-mj-00018-WED   *SEALED*   Filed 08/15/24   Page 27 of 29   Document 1

i.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

37.     Based on my training, experience, and research, I know that the **Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and all have the ability to access the internet.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

<u>**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**</u>

38.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

39.     As explained below, information stored within a cellular phone (cell phone) may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored within a cell phone can indicate who has used or controlled the cell phone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, contacts lists, instant messaging logs, and communications (and the data associated with the foregoing, such as date and time) may

17

Case 2:24-mj-00180-WED   Filed 08/15/24   Page 18 of 29   Document 1

indicate who used or controlled the cell phone at a relevant time. Further, such stored electronic data can show how and when the cell phone and its related account were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cell phone access, use, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cell phone account owner. Additionally, information stored within a cell phone may indicate the geographic location of the cell phone and user at a particular time (e.g., location integrated into an image or video sent via email or text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the cell phone owner's state of mind as it relates to the offense under investigation. For example, information in the cell phone may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement). Unless this data is destroyed, by breaking the cell phone itself or by a program that deletes or over-writes the data contained within the cell phone, such data will remain stored within the cell phone indefinitely.

40. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Device** because:

      a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

Case 2:24-mj-00018-WED-WSEALEDiled 08/15/24 Page 19 of 29 Document 1

portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

41. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the

Case 2:24-mj-08001-WED SEALED Filed 08/15/24 Page 20 of 29 Document 1

physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

42. Based on the above information provided in this affidavit, I believe there is probable cause that the **Device** possessed by GOODEN on his person on July 25, 2024 contains evidence of GOODEN's violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribution and Possession with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility to Facilitate the Distribution of a Controlled Substance).

Case 2:24-mj-00180-WGED-SEALED Filed 08/15/24 Page 21 of 29 Document 1

# ATTACHMENT A

## Property to be Search

The property to be searched is the cellphone recovered from Lorenzo GOODEN on July 25, 2024 during his arrest at 2920 N Vel R. Phillips Ave, Milwaukee, WI 53212, more fully described as the following, hereinafter referred as the "**Device**":

     a.     one Apple iPhone, white in color, in a clear case with gold.

The **Device** is currently located at the DEA Milwaukee District Office in Milwaukee, Wisconsin.

The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

# ATTACHMENT B

## Particular Things to be Seized

All records on the **Device** described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribution and Possession with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility to Facilitate the Distribution of a Controlled Substance) involving Lorenzo GOODEN since August 1, 2022 including:

a. Preparatory steps taken in furtherance of this crime;

b. Any audio, video, and/or photograph(s) files on the phone of the above criminal activity or of evidentiary value;

c. All voicemail and call records;

d. All text messages and call history;

e. Contact list, to include names, addresses, phone numbers, and/or email addresses;

f. All social media sites used and applications for social media sites;

g. Lists of customers and related identifying information;

h. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

i. Types, quantities, and prices of firearms possessed;

j. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and,

k. All bank records, checks, credit card bills, account information, and other financial records.

l. All internet activity;

m. All location data including from the phone and/or from any downloaded applications;

2

2.      Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

a.  records of Internet Protocol addresses used;

b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data), any photographic form, and/or any memory card or other data storage device within or connected to the **Device**.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original

CLERK'S OFFICE
A TRUE COPY
Aug 15, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of            )
*(Briefly describe the property to be searched*      )
*or identify the person by name and address)*       )   Case No.  24   MJ   180
one Apple iPhone, white in color, in a clear case with    )
gold borders; currently located at the        )   **Matter No.: 2023R00109**
DEA Milwaukee District Office          )
                          )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before      08/29/2024      *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____ .
                                 *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      08/15/2024 at 9:50 a.m.      *William E. Duffin*
                                 *Judge's signature*

City and state:      Milwaukee, Wisconsin          Hon. William E. Duffin, U.S. Magistrate Judge
                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to be Search

The property to be searched is the cellphone recovered from Lorenzo GOODEN on July 25, 2024 during his arrest at 2920 N Vel R. Phillips Ave, Milwaukee, WI 53212, more fully described as the following, hereinafter referred as the "**Device**":

      a.      one Apple iPhone, white in color, in a clear case with gold.

The **Device** is currently located at the DEA Milwaukee District Office in Milwaukee, Wisconsin.

The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

All records on the **Device** described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribution and Possession with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility to Facilitate the Distribution of a Controlled Substance) involving Lorenzo GOODEN since August 1, 2022 including:

a. Preparatory steps taken in furtherance of this crime;

b. Any audio, video, and/or photograph(s) files on the phone of the above criminal activity or of evidentiary value;

c. All voicemail and call records;

d. All text messages and call history;

e. Contact list, to include names, addresses, phone numbers, and/or email addresses;

f. All social media sites used and applications for social media sites;

g. Lists of customers and related identifying information;

h. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

i. Types, quantities, and prices of firearms possessed;

j. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and,

k. All bank records, checks, credit card bills, account information, and other financial records.

l. All internet activity;

m. All location data including from the phone and/or from any downloaded applications;

2

2.        Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.        Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

    a.  records of Internet Protocol addresses used;

    b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data), any photographic form, and/or any memory card or other data storage device within or connected to the **Device**.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3